STATE, Appellee, v. ZUMPANO, Appellant.

Ohio Appeals, Ninth District, Summit County.

No. 4573.   Decided January 25, 1956.

Buckingham, Doolittle & Burroughs, for appellee.
Ernest R. Genovese, John McCulloch, for appellant.

## OPINION

By HUNSICKER, J.

This is an appeal on questions of law from a judgment of guilty rendered by the Municipal Court of Barberton, Ohio, for the violation of a zoning regulation of Norton Township, Summit County, Ohio.

Rudy Zumpano, the appellant, lives on Dutt Road, Norton Township. Immediately south of the home is the home of Harold Scritchfield. There is a common boundary line between these neighbors 650 feet in length.

The Zumpano home is an attractive ranch type home on well-kept grounds. The Scritchfield home is built 40 feet to the south of the Zumpano home and is set back a distance of approximately 25 feet further from the road than the Zumpano house. The Scritchfield house, a two-story structure, is not as attractive as the Zumpano house.

The testimony of the witnesses for the State of Ohio was to the effect that the Scritchfield home and grounds around were not well kept, had several oil drums and a pile of lumber in the rear yard, and an unfinished excavation in the front yard, at the time Zumpano constructed the fence which is the cause of this action.

Zumpano, who presented no evidence at the trial, constructed a fence along his south line. This fence extended 250 feet, and varied in height from 3 feet at the front of his lot, to 8 feet along that portion adjacent to the Scritchfield home. This fence cut off the Scritchfield view to the north, and of course prevented Zumpano from looking to the south.

It is admitted that Norton Township has a zoning regulation, and that the section dealing with this fence is Article 6, Section 6.5, which reads as follows:

"Unnecessary structures, including a fence, the apparent purpose of which is to annoy or damage the owner of adjacent property is hereby prohibited as an accessory use."

An affidavit charging Zumpano with a violation of this section was filed, a warrant was issued, and Zumpano arrested. Counsel for Zumpano filed a demurrer to the affidavit on the grounds that:

"First: * * * the same fails to charge any offense against any valid zoning resolution of Norton Township or any law of the State of Ohio.

"Second: * * * Article 6, Section 6.5, of the Norton Township Zoning Resolution is null and void and beyond the power of the township trustees of Norton Township to enact."

The court overruled this demurrer. A trial was then had, and the court found Zumpano guilty.

The judgment assessed a fine of $500 and the costs of the action. Four hundred and seventy-five dollars of the fine was suspended upon the condition that Zumpano remove the fence.

It is from this judgment and the order overruling the demurrer that the case is before this court for review. The appellant, Zumpano, says the trial court erred in overruling the demurrer and the finding of the court was manifestly against the weight of the evidence.

The statutes which provide for township zoning regulations are found in **Chapter 519 R. C.** The specific section which grants the power is §519.02 R. C., and it reads as follows:

"The board of township trustees may regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures, including tents, cabins, and trailer coaches, percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures including tents, cabins, and trailer coaches, and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of such township, and for such purposes may divide all or any part of the unincorporated territory of the township into districts or zones of such number, shape, and area as the board determines. All such regulations shall be uniform for each class or kind of building or other structure or use throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones."

It is to be noted that the word "fence" is not included in the statute. This court, however, believes that the word "structure," as used in this section, contemplates and includes a fence. The section of the zoning resolution under consideration herein does not prohibit the erection of a fence. It does prohibit one that is unnecessary, having as its apparent purpose annoyance or damage to an owner of adjacent property.

We should examine the zoning section herein (Article 6, Section 6.5) in the light of the authority granted to a township to enact zoning resolutions. When we analyze §519.02 R. C., we find that the Board of township trustees of a township may regulate—that is, control, govern or direct—the following, with reference to "buildings or other structures": (1) location—which means place or having position; (2) height—which means altitude or elevation; (3) bulk—which means dimension or size; (4) number of stories—which means the number of floors of a building, elevated one above another; (5) size—which means the measure or extent of its dimensions; (6) percentage of lot areas which may be occupied—which means the amount of land space that may be used; (7) set-back building lines—the distance from the street or adjoining building or structure that such building can be placed on the lot; (8) sizes of yards, courts and other open spaces—the dimensions of such spaces; (9) the density of population—the minimum living-quarter area that each person may occupy; (10) the use of buildings and other structures—which

means the utility or enjoyment of such buildings and other structures, and the benefit to be derived therefrom; (11) the use of land for trade, industry, residence, recreation, or other purposes—which means the utility, benefit or enjoyment of such land for the purposes named.

Article 6, Section 6.5, of the Norton Township zoning resolution did not regulate—that is, control or govern—the place where the fence was built, the height, bulk or size of the fence, the percentage of lot area which the fence could occupy, the applicability of any set-back line, or the size of yard, court or other open space upon which the fence could be built.

Did it govern the "use," as such term is employed in §519.02 R. C.?

Other definitions of the word "use" as a noun are, according to Webster's New International Dictionary, Second Ed., "(1) Act of employing anything, or state of being employed; application; employment; as, the **use** of a pen * * *." "(7) Function; particular service; as, everything in nature seems to have its use." "(11) **Law.** That enjoyment of property which consists in its employment, occupation, exercise, or practice * * *."

Thus we think it is clear that, by legislative enactment, the use to which a fence is put is a proper subject for control or regulation by the township electorate.

The fence, in the instant case, did not extend the entire length of the boundary line between these parties, it was not intended to enclose or exclude animals, keep persons from coming onto the property, or accomplish any other legitimate use so far as this record discloses. It may have been to shut out the unsightly condition of the Scritchfield property, to keep them from looking into the Zumpano house, to keep from hearing (as there is some testimony), or at least dim, the language used when Mrs. Scritchfield called her child.

Zumpano did not testify, and all we have is some statements on cross-examination that might allow these latter inferences.

Our next question must be directed, however, to the relation of Article 6, Section 6.5, of the township zoning resolution, to that part of §519.02 R. C., which says: "**All such regulations shall be uniform for each class or kind of** building or other **structure** or use throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones." (Emphasis ours.)

There is no uniform regulation, so far as a fence is concerned, in this section of the zoning resolution.

What is meant by the word "unnecessary" in such resolution? Who is to determine whether it is unnecessary: the neighbor, or the one who erected the fence? Who is to determine the "apparent purpose"? Who is to determine whether it "annoys" the next-door neighbor or the general public? Who determines whether it damages the next-door neighbor; that neighbor, or some other person? There is no standard by which any of these requirements can be determined before a fence is erected. There is no provision that says a fence shall not be built higher than X number of feet or closer to the front lot line than X distance. Such a regulation would have uniform application throughout the township.

One can easily imagine that, under the existing regulation (Article 6, Section 6.5), an allotment could have many fences, varying in height from a foot to ten feet or more, thus making such an allotment a most grotesque sight. Some neighbors would welcome high fences so that neither would be bothered with what went on next door, while still other neighbors would object to a high fence because it cut off their opportunity to see what the people next door were doing.

The writer of this opinion believes that under the circumstances herein an 8-foot fence is too high but the regulations should have so stated in order that there could be uniformity in the construction of fences throughout the township.

We realize that lands in the township are used for farming, for business, and for residences, and that the same size fence is not proper in each instance. The answer is plainly set out in the statute (§519.02 R. C.), for the "regulations shall be uniform for each class." Thus there can be one size fence on the farm lands and another which separates houses.

Under the present regulation, uniformity is abandoned for a non-existent system, whose enforcement is left to a next-door neighbor, a more-distant neighbor, or to a zoning official.

Thus the effect of Article 6, Section 6.5, is to place in the hands of persons other than the legislative body the power to control the height, location, length and type of construction of any fence built on the boundary line between adjoining homes.

"2. Generally, a law which confers discretion on an administrative officer or board without establishing standards for the guidance of the conferee is a delegation of legislative power and unconstitutional." High School Board, etc., v. Board of Education, etc., 96 Oh Ap 429.

And see: Weber v. Board of Health, etc. et al., 148 Oh St 389; Northern Boiler Co. v. David et al., 157 Oh St 564.

We therefore determine that:

1. A fence is a "structure" within the terms of the statute granting authority for zoning by townships.

2. The phrase "the uses of buildings and other structures" contemplates the right of such zoning resolution adopted by a township to control the erection of fences.

3. The section here in dispute—Article 6, Section 6.5, of the Norton Township zoning resolution—does not establish a uniform regulation "for each class or kind of building" for the erection of fences within the township, as required by §519.02 R. C.

4. Article 6, Section 6.5, of the Norton Township zoning resolution is a delegation of legislative power to an administrative officer or to a citizen, and hence is unconstitutional and void.

For the foregoing reasons, the judgment in this cause is reversed, and final judgment is rendered in favor of the appellant, Zumpano. The appellee shall pay the costs herein.

Judgment reversed, and the defendant is discharged.

STEVENS, PJ, DOYLE, J, concur.